United States District Court, Eastern District of Arkansas,

Western Division

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 3 0 2024

TAMMY H. DOWNS, CLERK
By:_____
                DEP CLERK

BARBARA A. BROWN, Plaintiff

v.

State of Arkansas & Bureau of Legislative Research, Defendants

Case No. 4:24-cv-377-KGB

April 30, 2024

This case assigned to District Judge __Baker__
and to Magistrate Judge __Moore__

# Complaint

### Introduction

Ms. Brown alleges race discrimination; disparate treatment; and retaliation, including retaliation for engaging in protected activity. Ms. Brown asserts several discrimination and retaliation claims and pursues the following: **(1)** race discrimination for failure to promote her into the role of Senior Legislative Analyst, delayed promotion into the role of Legislative Analyst II, delayed promotion into the role of Legislative Analyst III; overly critical and heightened scrutiny of work product compared to non-Black employees; lower merit-based incentives than non-Black employees despite more seniority and more favorable performance evaluations **(2)** race-based pay disparity that Ms. Brown discovered and repeatedly requested be corrected. This included lower pay in all positions held by Ms. Brown compared to non-Black employees that were similarly situated. This included lower base salary for roles of Legislative Analyst II and Legislative Analyst III, and the subsequent lower cost of living increases and merit-based increases that are calculated from the base salary **(3)** retaliatory treatment and retaliation for engaging in protected activity. Ms. Brown alleges that she was subjected to a hostile work environment for raising concerns and then formally reporting systemic racism within the Bureau of Legislative Research (BLR) that adversely affected African-American employees. Ms. Brown alleges that after notifying her employer in January 2023 of her intent to file a formal EEOC complaint and submitting the EEOC complaint in February 2023, she was subjected to a

disciplinary process in March 2023, suffering retaliation for engaging in protected activity. Ms. Brown also alleges her employer engaged in retaliation for engaging in protected activity when it subjected her to retaliation for cooperating in a colleague's formal EEOC complaint against the agency.

## JURISDICTION AND VENUE

1. Ms. Brown's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).
2. This Court is an appropriate venue for all of Ms. Brown's claims because a substantial majority of events giving rise to Ms. Brown's claims occurred in this judicial district.

## PARTIES

3. Ms. Brown is a resident of Arkansas, within Pulaski County, and submits herself to the jurisdiction of this Court.
4. Ms. Brown is an African-American woman.
5. Ms. Brown was employed by Defendants at all times material to this Complaint.
6. At all relevant times, Ms. Brown was an "employee" of Defendants within the meaning of Title VII, 42 U.S.C. § 2000e(f).
7. Defendants are subject to the jurisdiction of this Court and may be served with process at the following locations:

    <u>Defendant 1</u>
    Bureau of Legislative Research (BLR)
    315 State Capitol, Little Rock, Arkansas 72202

    <u>Defendant 2</u>
    State of Arkansas
    Office of Attorney General, 323 Center Street, Suite 200, Little Rock, AR 72201.
8. Defendants were at all relevant times an "employer" under Title VII, 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEEDINGS

9. Ms. Brown filed a timely formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") Little Rock, Arkansas Division. Ms. Brown submitted amendments to her complaint to add factual developments and her retaliation for engaging in protected activity claims.

10. More than 180 days have passed since the filing of Ms. Brown's EEOC complaint, and her Right to Sue (RTS) letter was issued on February 1, 2024, through her EEOC portal. Therefore, under 42 U.S.C. § 2000e-16(c), she has exhausted her administrative remedies and may file this Complaint.

11. Ms. Brown has complied with all other conditions precedent to the institution of this lawsuit.

## FACTS

12. Throughout 2019-2023, Ms. Brown made numerous requests to her employer to rectify what she believed to be racial discrimination in job classification and promotion schedule.

13. She repeatedly made verbal requests and submitted written communication highlighting this inequity and requested to be advanced to classification titles and salary in line with her education, and experience, based on standards applied to her non-African-American colleagues; this included withheld classifications of Legislative Analyst III and Senior Legislative Analyst.

14. Between these dates of 2019 through 2023, Ms. Brown was told by Bureau of Legislative Research (BLR) Executive Director Martha "Marty" Garrity, Assistant Director Estella Smith and Administrator for Committee Staff Services Sheri Thomas that she had "not yet met the years of experience qualification".

15. However, there were multiple non-African American employees who were promoted to Legislative Analyst III, Senior Legislative Analyst and a Division Administrator, none of whom were being held to the "experience qualification" schedule being applied to Ms. Brown.

16. Examples included Julie Holt, Angelica Mercado and Jasmine Ray, with Julie Holt allowed to skip the position of Senior Legislative Analyst to become a Division Administrator.

17. Even though Ms. Brown received excellent evaluations and accolades from legislators and agency officials, her work product would be scrutinized for things such as extra spacing in a document.
18. However, White Analysts in her division were allowed to put forth work products that were rife with spelling and grammatical errors, misinformation and formatting issues.
19. While this was a pattern throughout Ms. Brown's employment, she raised this directly in an email and subsequent meeting with BLR Assistant Director Estella Smith.
20. This occurred approximately October 2021, with Ms. Brown providing work product produced by her white, male colleague Phil Price. This was a committee agenda containing errors listed above.
21. Ms. Brown questioned why White colleagues were not held to the same standards of work product expectation and did not face the same level of admonishment and criticism as she and other African-American employees.
22. Smith stared blankly at Ms. Brown, offered no explanation and then ended the meeting.
23. However, this level of hyper scrutiny continued, with Ms. Brown also being subjected to what she believed to be a constant hostile attitude from management and retaliatory decisions in managing her day-to-day work life.
24. Another example of Ms. Brown being targeted, including undermining her ability to perform her duties, including work travel authorization and reimbursements.
25. When compared to her White counterparts, Ms. Brown's ability to plan and prepare for work-required travel received constant interference from BLR management.
26. In June of 2019, Ms. Brown had an extensive email exchange with BLR Assistant Director Estella Smith and BLR Administrator Sheri Thomas.
27. In the email, Ms. Brown stated that management's decision to alter her travel submission would place her in jeopardy of arriving with insufficient time to staff the committee.
28. Ms. Brown stated in her email communication, that the time that she was attempting to arrive was actually a BLR policy requirement, so it was illogical that management would be interfering with her meeting this policy standard.
29. Ms. Brown again reported that she believed that this was being done deliberately to set her up for failure and was another example of targeting her for unexplained harassing treatment because she was one of the agency's African-American employees.

30. Ms. Brown stated that she asked her White, Analyst counterparts if their in-state travel submissions had ever been modified from its original submission, and was told that this had never occurred for them.
31. This over scrutiny and interference with work duties connected to travel was a recurrent theme, including years prior, through July 2022, when Ms. Brown completed her last travel assignment.
32. Due to the employer reprimand of May 2023, that Ms. Brown alleges is retaliation for engaging in protected activity, Ms. Brown was removed from Committee Staff Services and no longer staffed traveling committees.
33. Throughout her employment, Ms. Brown has had numerous meetings, verbal and written communications questioning and reporting racial discrimination, racial pay inequity and what she experienced as hostile and harassing treatment, as a result of reporting these violations.
34. These communications and requests for corrective action spanned multiple members of senior management, including BLR Executive Director "Marty" Garrity, Assistant Director Richard Wilson, Administrator and later Assistant Director Estella Smith, Assistant Director Jessica Whitaker, Administrator Sheri Thomas, Legal Counsel to the Director/Human Resources Counsel Jill Thayer and Human Resources & Professional Development Analyst Janna Omundson.
35. The BLR does not have a designated Human Resources Director, with these HR duties previously handled by Legal Counsel to the Director/HR Counsel Jill Thayer.
36. Ms. Brown repeatedly raised objections and the conflict of interest with having her complaints of discrimination handled by the attorney of the primary individual committing the violations, Executive Director "Marty" Garrity, and individuals acting as agents of Ms. Garrity
37. After the March 2021 Executive Subcommittee of the Legislative Council hearing, Jill Thayer's title was updated to "BLR Legal Counsel".
38. On June 27, 2019, Ms. Brown received an email response from then BLR Assistant Director of Committee Staff Services (CSS) and Assistant Director of Research & Policy Analysis
39. The email was in response to Ms. Brown's reporting concerns relating to the promotion/advancement ladder for Legislative Analysts and how it was being unequally applied to her versus her non-African-American counterparts.

40. In Director Wilson's email reply, he stated, "the required years to advance up the ladder for an employee entering the BLR as a GS08 appears as follows…2/4/4/4."
41. As explained by Assistant Director Wilson, it means that once an analyst reaches the Legislative Analyst II status, regardless of how they attained the status (coming in with a master's degree or two years in the entry level position) the employee's advancement would then be in 4-year increments until they reached the end of the advancement ladder as an Analyst.
42. At the time of the email, the Analyst ladder consisted of Legislative Analyst, Legislative Analyst II, Legislative Analyst III, Senior Legislative Analyst and Senior Legislative Analyst II.
43. Apprximately spring 2023, the BLR added the role of Senior Legislative Analyst III.
44. However, non-African-American employees were allowed to circumvent this advancement policy, which positioned them to outpace their African-American counterparts in career advancement, salary, pay incentives and pension & retirement.
45. As shared above, three examples of employees who did not have to follow the promotion/advancement ladder are Angelica Mercado, Julie Holt and Jasmine Ray.
46. Jasmine Ray, a White, female employee, was hired September 2020, as a Legislative Analyst III.
47. At the time Ms. Ray was hired, Ms. Brown had been employed for five years and was still a Legislative Analyst II.
48. Julie Holt, a White, female employee, was hired as a Legislative Analyst II in October 2016; promoted to a Legislative Analyst III in August 2018; and BLR Administrator for Research and Policy Analysis in March 2020.
49. Angelica Mercardo, a non-black employee, was hired as a Legislative Analyst in October 2014; promoted to Legislative Analyst II in December 2016; and Legislative Analyst III in July 2019.
50. Ms. Mercardo was promoted to Legislative Analyst III seventeen (17) months before she was eligible, based on the supposed standards laid out in Assistant Director Wilson's email.
51. Ms. Mercardo is currently a Senior Legislative Analyst, while Ms. Brown holds the title of Legislative Analyst III.

52. Despite getting an excellent evaluation for the period of May 1, 2022, through April 30, 2023; having a high workload and committee meeting count; and supporting Administrator Sheri Thomas in executing the duties of Thomas' administrative role, she received a lower merit increase percentage then her non-African American counterparts.
53. Ms. Brown carried this high-level responsibility as she was the senior analyst in the division. However, she was not given the title or compensation.
54. Ms. Brown received a 2.5% merit increase, while White and other non-black employees received 4.5%.
55. This also occurred with the July 1, 2022 merit increase disbursement.
56. In 2022, Governor Asa Hutchinson authorized state employees to receive at least a 5% merit increase.
57. Ms. Brown received 5%, however, non-black employees with less tenure received 6%.
58. July 1, 2021, Ms. Brown received a 3.5% merit increase, however, non-black employees received 4.5%.
59. This is part of a pattern within BLR affecting all African-American employees, with examples of A-level committees staffed by African-American Analysts and the assigned Administrative Assistants (AA) receiving lower merit increases compared to non-African-American Analysts and AAs for staffing A-level committees.
60. Approximately January/February 2021, Ms. Brown filed a formal compliant of racial discrimination. This led to the Executive Subcommittee of the Arkansas Legislative Council being convened March 2021 to address Ms. Brown's personnel matter alleging racial discrimination, including alleging systemic and pervasive racial discrimination with the BLR.
61. This resulted in multiple personnel actions being implemented and retroactive action taken, with Executive Director "Marty" Garrity stating that some individuals had "been made whole"
62. However, Ms. Brown was not made whole and received no corrective action to her withheld advancements or pay disparity.
63. Legislators that were empannelled on the committee were in effect, Ms. Brown's employers and found in favor of the employer.
64. Because of the 2021 and 2023 empannelled legislative committees' knowledge and willful disregard for Ms. Brown's civil and employee rights, Ms. Brown has named the State of

Arkansas, as a second and separate defendant in this action. In their compactly as Ms. Brown's employer, legislative members failed to act and thus deprived Ms. Brown of her federally protected rights.

65. In or about August 2021, Ms. Brown again raised the racial disparity that was adversely affecting her and other African-American colleagues directly to her supervisor Sheri Thomas, BLR Administrator of Committee Staff Services.

66. Ms. Brown provided the specific example of the July 2021 merit disbursements of Allison Potratz, Ashley Miller, Glenda "Michelle" Nelson and Sheila Beal, which highlighted this disparity.

67. These were employment actions taken post the March 2021 executive subcommittee of the legislative council subcommittee's hearing.

68. Ms. Thomas was unable to provide a rationale to explain why committees staffed by non-African-American employees were receiving higher merit increases that impacted overall base salaries.

69. In December 2022, Ms. Brown raised this racial disparity again when she had a conversation with "Marty" Garrity, BLR Executive Director and Jessica Whittaker, BLR Assistant Director of Committee Staff Services regarding plans to assign Ms. Brown to the Judiciary Committee for the upcoming 2023 Arkansas Legislative Session.

70. This would have been in addition to other committees that Ms. Brown was staffing.

71. Due to the high visibility of the committee, as well as the increased level of work and intensity, analyst assigned typically receive a higher merit increase.

72. Additionally, since Ms. Brown's employment with BLR dating back to 2013, this committee was always staffed by a white Analyst.

73. Immediately preceding Ms. Brown's assignment, Judiciary Committee was staffed by Allison Potratz, a white female.

74. Ms. Potratz received a 4.5% merit increase for 2021 and a 6% merit increase in 2022.

75. However, Ms. Brown was told by "Marty" Garrity in December 2022 that Ms. Brown would not be receiving the increase typically associated with the assignment.

76. Ms. Brown instead received a 2.5% increase compared to Potratz's 4.5% and 6%, despite Ms. Brown performing the exact same duties, having more experience and more tenure as an analyst than Potratz.

77. Ms. Brown raised these points with Garrity and Whittaker, emphasizing that she again had been an analyst longer than Potratz and was about to perform the exact same duties and only race seemed to be a difference in how she was being paid.

78. Neither Garrity nor Whittaker could provide an alternate explanation, with Garrity stating "well, Barbara, you're not going to get any more money."

79. Ms. Brown again raised this December 2022 conversation as an example of how work conditions for white employees were vastly more favorable compared to work conditions for her and African-American employees.

80. This was during a conversation between Ms. Brown and Jessica Whittaker, during Ms. Brown's June 2023 performance evaluation.

81. Ms. Brown circled back to the disparity that she raised in December 2022 with Whittaker, when Garrity was present, and requested that the difference in pay that seemed to be based on race be rectified.

82. Whitaker did not have an explanation as to why Ms. Brown received a 2.5% merit increase for staffing the same committee as a White employee that received 4.5% and 6% the two previous years respectively.

83. Whittaker stated that "Marty" had decided what Ms. Brown should receive and offered no alternate explanation to this being driven by race.

84. Ms. Brown alleges that the hostile work environment that she had been subjected to worsened, as a result of making this 2021 formal complaint against the agency.

85. Ms. Brown alleges that she was subjected to harassing and combative treatment, including violations of her protections under Fair Labor Standards Act (FLSA), Family Medical Leave Act (FMLA) and American with Disabilities Act (ADA).

86. Ms. Brown alleges conditions continued to deteriorate, until she felt compelled to file a formal complaint with the EEOC February 24, 2023.

87. Despite having received no notice of disciplinary concerns or progressive action, Ms. Brown was placed under a disciplinary investigation in March 2023.

88. The exact date is unclear, as Ms. Brown was not informed that she was being investigated or for what infraction she was being accused.

89. BLR hired outside counsel of Ms. Carol Witherspoon and later Mr. Abtin Mehdizadegan to oversee the agency's personnel matter, despite being informed that actions were being

reported as retaliatory for engaging in protected activity and violation of Title VII protections.

90. As a result of the disciplinary investigation, Ms. Brown was reprimanded, with consequences implemented May 2023.

91. Additionally, Ms. Brown suffered retaliation for engaging in protected activity, as a result of providing aid and agreeing to be a witness in the EEOC complaint of another BLR employee Ms. Kendra North.

92. Ms. Brown alleges that BLR management and outside counsel Abtin Mehdizadegan questioned her about her level of cooperation in Ms. North's complaint, attempting to intimidate and dissuade Ms. Brown from participation.

93. Ms. Brown's aid of Ms. North's complaint constitutes protected activity.

94. The BLR not only violated the protection clause of retaliation for engaging in protected activity, they listed Ms. Brown's protected activity in their rationale for her reprimand.

## COUNT I
## RACE DISCRIMINATION

95. Plaintiff incorporates by reference paragraphs 1 through 94 of the Amended Complaint as if fully restated herein.
96. Ms. Brown is an African-American woman.
97. Ms. Brown is an "employee" as defined by Title VII, 42 U.S.C. § 2000e et seq.
98. Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e et seq.
99. Ms. Brown was qualified for the position she held with Defendants.
100. Defendants discriminated against Plaintiff in the terms and conditions of her employment by paying her less than other non-African American Analysts.
101. Defendant's actions constitute unlawful intentional race discrimination in violation of Title VII of the Civil Rights Act, as amended, thus entitling Ms. Brown to all appropriate relief under the statute.
102. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

103. Plaintiff is entitled to an award of back pay and benefits, compensatory damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII, and all federal statutes providing remedies for violations of Title VII.

## COUNT II
## RACE-BASED PAY DISPARITY

104. Plaintiff hereby incorporates by reference the preceding paragraphs of the Amended Complaint as if fully restated herein.
105. Ms. Brown is an "employee" as defined by Title VII, 42 U.S.C. § 2000e et seq.
106. Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e et seq.
107. Further, Defendant paid Ms. Brown less than other non-African-American individuals in equivalent positions at the agency.
108. Defendant's actions constitute unlawful intentional discrimination in violation of Title VII of the Civil Rights Act, as amended, along with the Lilly Ledbetter Fair Pay Act, thus entitling Ms. Brown to all appropriate relief under these statutes.
109. Defendant's actions were willful, deliberate and intended to cause Ms. Brown harm and/or were committed with reckless disregard of the harm caused to Ms. Brown, and were in derogation of her federally protected rights.

## COUNT III
## RETALIATION (INCLUDING HOSTILE WORKING ENVIRONMENT)

110. Plaintiff incorporates paragraphs 1 through 94 above as if fully set forth herein.
111. At all relevant times, Ms. Brown was an "employee" of Defendant as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.
112. Defendant was at all relevant times an "employer" as that term is defined by Title VII, 42 U.S.C. §2000e et seq.
113. During her employment with Defendant, Ms. Brown engaged in statutorily protected activity by, among other things, complaining of race discrimination in violation of Title VII, and in filing a formal EEO complaint.

114. Plaintiff was subjected to a discriminatory and hostile work environment by BLR Executive Director "Marty Garrity, and those acting as her agents, for which Defendant is liable.

115. Defendant, through its agents, representatives, and employees, engaged in actions and omissions constituting retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

116. As described in more detail in the above paragraphs, Defendant retaliated against Ms. Brown by, inter alia, denying her equal advancement, denying her accompanying pay raise, moving her to a less prestigious role and materially changing her work hours and duties, issuing her a lowered performance evaluation, denying her full access to protections provided by FLSA, FMLA and ADA, failing to compensate her for all time worked, subjecting her to a pretextual investigation, and issuing erroneous disciplinary action, all of which altered the terms and conditions of her employment and all of which would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

117. Defendant lacked any legitimate justification for subjecting Ms. Brown to the retaliatory actions complained of above and/or any such purported legitimate justifications are mere pretext for retaliation.

118. The actions of Defendant in subjecting Ms. Brown to the adverse actions complained of above were willful, deliberate, and intended to cause Ms. Brown harm and/or were committed with reckless disregard for the harm caused to her thereby, and were in derogation of her federally protected rights.

119. As a direct and proximate result of Defendant's unlawful retaliatory conduct against Ms. Brown, and as a direct and proximate result of the violations of her federally protected rights, Ms. Brown has suffered harm, including but not limited to loss of compensation and benefits and emotional distress.

120. As a result of the above-pled violations of Title VII, Ms. Brown is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, rectification of entitled position and salary, reasonable attorney fees and costs and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## APPLICABLE STATUTES

121. Ms. Brown alleges that her employer both failed to promote and delayed promoting her; made decisions about job classification, career ladder and noncompetitive promotion denials and tenure denials because of race-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e, et seq.

122. Ms. Brown alleges that her employer made decisions about her base salary, merit increases and failed to respond to requests for raises in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e, et seq.; the Lilly Ledbetter Fair Pay Act of 2009.

123. Ms. Brown alleges that retaliatory practices that impacted her access to and freedom to benefit from the Family Medical Leave Act (FMLA), including refusal for reasonable accommodation violated the Family and Medical Leave Act of 1993 and Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (1990)

124. Ms. Brown alleges Executive Director's refusal to compensate her for hours worked in excess of her 40-hour workweek as violations of The Fair Labor Standards Act of 1938, as amended 29 U.S.C. 201, et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) a declaratory judgment that the Defendant has engaged in unlawful employment practices in violation of Title VII;

(b) an injunction prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII;

(c) full back pay from the date Plaintiff's should have been advanced into roles of Senior Legislative Analyst, Legislative Analyst III, and Legislative Analyst II, taking into account all raises to which Plaintiff would have been entitled but for the unlawful employment practices, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) rectification of withheld Senior Analyst title or in lieu thereof front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) reasonable attorneys' fees and costs; and

(g) other and further relief as the Court deems just and proper.

Respectfully submitted,

*[signature]*

Barbara A. Brown

12 Nantucket Circle
Little Rock, AR 72209